## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LAZY DAYS' R.V. CENTER, INC., et al.,[1] | ) Case No. 09-13911 (KG) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |
| | ) **Ref. Docket No. 14** |

### INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING FROM BANK OF AMERICA, N.A., AS AGENT, AND BANK OF AMERICA, N.A., AND KEYBANK NATIONAL ASSOCIATION, AS LENDERS; (B) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (C) AUTHORIZING USE OF CASH COLLATERAL; (D) MODIFYING THE AUTOMATIC STAY; AND (E) SCHEDULING A FINAL HEARING

On November 6, 2009, the Court heard the motion dated November 5, 2009 (the "Motion"), of Lazy Days' R.V. Center, Inc. (the "Company"), and the other debtors,[2] each as a debtor and debtor in possession (each individually a "Debtor" and, collectively, the "Debtors"):

(i)    for authorization and approval, pursuant to sections 105, 361, 362, and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the Debtors to obtain postpetition financing (the "DIP Facility") from Bank of America, N.A., as administrative agent and collateral agent (in such capacities, the "DIP Agent"), and Bank of America, N.A., and KeyBank National Association, as lenders (in such capacity, the "DIP Lenders"), pursuant to the terms and conditions of the Post-Petition Credit Agreement dated as of November __, 2009, among the Debtors, the DIP Agent, and the DIP Lenders (the "DIP Credit Agreement"), to obtain

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Lazy Days' R.V. Center, Inc. (4794); LD Holdings, Inc. (1834); LDRV Holdings Corp. (6915); and RV Acquisition Inc. (1630). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 6130 Lazy Days Boulevard, Seffner, Florida 33584-2968.

[2] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Lazy Days' R.V. Center, Inc., a Florida corporation (4794); RV Acquisition Inc., a Delaware corporation (1630); LD Holdings, Inc., a Delaware corporation (1834); and LDRV Holdings Corp., a Florida corporation (6915).

postpetition financing from BOA (as defined below) with respect to certain Existing Letters of Credit and an Epayables Program (as defined in the DIP Credit Agreement), and all instruments, documents, and agreements executed pursuant to the DIP Credit Agreement (together with the DIP Credit Agreement and including without limitation all documents pertaining to the Existing Letters of Credit and the Epayables Program, the "DIP Financing Documents") to: (a) provide floor plan financing for the Company, (b) to the extent permitted by the DIP Credit Agreement, fund the Company's working capital needs, (c) permit the Debtors to pay the prepetition loans and other prepetition claims and obligations owed to Bank of America, N.A., as administrative and collateral agent (the "Prepetition Agent"), and Bank of America, N.A., and KeyBank National Association, as lenders (the "Prepetition Lenders") under the Prepetition Credit Facility (as defined below), which amounts are stipulated by the Debtors to be secured by the prepetition "Collateral" (as defined in the Prepetition Credit Facility) (the "Prepetition Collateral"), (d) pay all fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Agent and the DIP Lenders under the DIP Facility and the DIP Financing Documents (as defined below), (e) provide for the Company to secure the obligations of Bank of America, N.A. (individually, "BOA"), under the "Existing Letters of Credit" (as defined in the DIP Credit Agreement) by a security interest in the "L/C Security Account" (as defined in the DIP Credit Agreement) and indemnify BOA for losses arising from the Existing Letters of Credit, and (f) permit the Company to participate in the "Epayables Program" (as defined in the DIP Credit Agreement) offered by BOA, secure the Company's obligations under the Epayables Program with a security interest in the "Epayables Security Account" (as defined in the DIP Credit Agreement), and indemnify BOA for losses arising from that program;

2

(ii)        requesting, pursuant to section 364(c) and (d) of the Bankruptcy Code, that the financing under the DIP Financing Documents: (a) have priority over any and all administrative expenses, including, without limitation, the kinds specified in sections 105, 326, 330, 331, 503(b), 506(c) (subject to approval in the Final Order), 507(b), and 726 of the Bankruptcy Code, except for the Carve-Out (as defined below) (the "DIP Facility Superpriority Claims"), and (b) be secured by first priority security interests in, and liens on (collectively, the "DIP Facility Liens") the assets of the Debtors constituting "Collateral" as defined in the respective DIP Financing Documents (but excluding any actions or proceeds of actions under Chapter 5 of the Bankruptcy Code and subject to any prior permitted liens under the Prepetition Credit Agreement), as provided for by section 364(c) and (d) of the Bankruptcy Code (all of the foregoing, collectively, the "Collateral");

(iii)       requesting, pursuant to section 363 of the Bankruptcy Code, authorization for the Debtors' use of "Cash Collateral" (as defined in section 363(a) of the Bankruptcy Code) pursuant to the DIP Credit Agreement and this Order;

(iv)       seeking modification of the automatic stay imposed by section 362 of the Bankruptcy Code as provided in this Order;

(v)        authorizing the Debtors, on an interim basis, to obtain under the DIP Facility from the DIP Agent and DIP Lenders the principal amount of up to $45,000,000 pursuant to the terms of the DIP Credit Agreement and the other DIP Financing Documents, to maintain the Existing Letters of Credit with BOA, and to obtain financing on an interim basis from BOA pursuant to the Epayables Program, to provide to BOA the "L/C Security Agreement" (as defined in the DIP Credit Agreement), to participate in the Epayables Program of BOA, and to provide to BOA the "Epayables Security Agreement" (as defined in the DIP Credit Agreement);

3

(vi)     requesting, pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing" be held for the Court to consider entry of an order approving the DIP Facility and the use of Cash Collateral on an interim basis; and

(vii)    requesting, pursuant to Bankruptcy Rule 4001, that a final hearing (the "Final Hearing") be held for this Court to consider entry of an order approving the DIP Facility on a final basis (the "Final Order"), as set forth in the Motion and the DIP Credit Agreement; and, pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the Interim Hearing having been provided by the Debtors as set forth below.

Having considered the Motion and the record made by the Debtors at the Interim Hearing, including without limitation the declarations of Randall Lay, Chief Financial Officer of the Company in support of the Debtors' Chapter 11 petitions and first day Motions and Ford R. Philips in support of the Motion, the Court finds as follows:

A.      On November 5, 2009 (the "Petition Date"), the Debtors each commenced in this Court a case under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      Pursuant to an order of this Court, the Debtors' chapter 11 cases (the "Chapter 11 Cases") have been consolidated for procedural purposes only and are being jointly administered.

C.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

4

D.      The Debtors acknowledge that (a) the Prepetition Agent, the Prepetition Lenders, and the Company are parties to a Third Amended and Restated Credit Agreement, originally dated as of July 15, 1999, as amended and restated as of July 31, 2002, May 14, 2004, and February 22, 2007, and as subsequently amended January 14, 2008, April 14, 2008, August 30, 2008, September 1, 2008, and December 31, 2008 (the "Prepetition Credit Agreement"), pursuant to which the Prepetition Agent and the Prepetition Lenders made available to the Company a revolving floor plan credit facility in an aggregate amount of up to $80,000,000 (the "Prepetition Credit Facility"), (b) BOA has issued the Existing Letters of Credit on behalf of the Company, and (c) BOA has extended credit to the Company pursuant to its Epayables Program.

E.      The Debtors acknowledge that events of default occurred under the Prepetition Credit Facility and Epayables Program, which resulted in all "Obligations" (as defined in the Prepetition Credit Agreement and the Epayables Program) becoming due and payable. The Debtors acknowledge that, as of the Petition Date, (i) an aggregate principal amount of not less than approximately $22 million was outstanding in respect of loans and other extensions of credit made by the Prepetition Agent and the Prepetition Lenders to the Company pursuant to the Prepetition Credit Facility, plus interest, fees, and expenses as provided in the Prepetition Credit Agreement and all related documents (collectively, the "Prepetition Indebtedness"), and (ii) an aggregate principal amount of not less than approximately $92,000 was outstanding in respect of the existing Epayables Program, plus interest, fees, and expenses with respect to that program (the "Prepetition Epayables Indebtedness").

F.      To secure the Prepetition Indebtedness, the Debtors acknowledge and agree that the Debtors granted to the Prepetition Agent and the Prepetition Lenders, pursuant to the Prepetition Credit Facility, liens and security interests in the Prepetition Collateral.

5

068731.1001

G.      The Debtors acknowledge and agree that the Prepetition Agent's and Prepetition Lenders' liens on and to the Prepetition Collateral constitute valid, binding, enforceable, and perfected liens on and to the Prepetition Collateral, having the priority set forth in the Prepetition Credit Facility, and are not subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.    The Debtors acknowledge and agree that the Prepetition Indebtedness constitutes the legal, valid, binding, and non-avoidable obligations of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), and is not subject to any offset, defense, or counterclaim, and no portion of the Prepetition Indebtedness is subject to avoidance, subordination, or recharacterization pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and the Debtors do not possess and will not assert any claim, counterclaim, offset, or defense of any kind, nature, or description, which would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Indebtedness.

H.      The Debtors acknowledge and agree that the Prepetition Epayables Indebtedness constitutes the legal, valid, binding, and non-avoidable obligations of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), and is not subject to any offset, defense, or counterclaim, and no portion of the Prepetition Epayables Indebtedness is subject to avoidance, subordination, or recharacterization pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and the Debtors do not possess and will not assert any claim, counterclaim, offset, or defense of any kind, nature, or description, which would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Epayables Indebtedness.

6

I.    The Debtors' businesses require the immediate availability of credit to finance the ordinary costs of their operations, and, without such credit, the Debtors would not be able to operate their businesses, and the Debtors' estates would be irreparably harmed.

J.    The Debtors are unable to obtain sufficient interim unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense, and credit facilities in the amounts and on the terms provided by the DIP Facility and the DIP Financing Documents are unavailable to the Debtors without their granting (i) the DIP Facility Superpriority Claims, (ii) the DIP Facility Liens as provided herein and in the DIP Financing Documents, and (iii) the liens and security interests granted pursuant to the L/C Security Agreement and the Epayables Security Agreement.

K.    BOA, the DIP Agent, and the DIP Lenders have indicated a willingness to provide financing to the Debtors subject to (i) the entry of this Order, (ii) the terms and conditions of the DIP Financing Documents, (iii) the terms and conditions of all preliminary or "first-day orders" that are, in form and substance, reasonably satisfactory to BOA, the DIP Agent, and the DIP Lenders, and (iv) findings by the Court that such financing is essential to the Debtors' estates, that the terms of such financing were negotiated in good faith and at arm's length, and that BOA's, the DIP Agent's, and the DIP Lenders' security interests, liens, encumbrances, claims, superpriority claims, and other protections granted pursuant to this Order and the DIP Financing Documents will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

L.    The Debtors provided notice of the hearing on the Motion and the entry of this Order by facsimile or electronic mail (or, where both of the foregoing were impracticable,

7

overnight delivery) to (i) the twenty largest unsecured creditors listed in the Debtors' consolidated list of creditors, (ii) the Office of the United States Trustee for the District of Delaware, (iii) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy 1007(d), (iv) counsel to the DIP Agent and the Prepetition Agent, (v) the Internal Revenue Service, (vi) the Attorney General of the United States, (vii) the Securities and Exchange Commission, (viii) Bank of New York Mellon, as indenture trustee for the Debtors' 11.75% Senior Notes, (ix) counsel to the Ad Hoc Noteholders Committee, and (x) all creditors known to the Debtors who may have liens against the Debtors' assets or properties (collectively, the "Service Parties"). Under the urgent circumstances, requisite notice of the Motion and the relief requested thereby has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this Order.

M.    The Debtors have requested, and good cause has been shown for, the immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent entry of this Order, the Debtors' estates will be immediately and irreparably harmed.

N.    The ability of the Debtors to finance their respective operations and the availability to the Debtors of sufficient working capital through the incurrence of new indebtedness for borrowed money and other financial accommodations, including credit support, is in the best interests of the Debtors and their respective creditors and estates. The interim financing and other relief sought in the Motion is vital to avoid immediate, irreparable harm to the Debtors' estates and to allow the orderly continuation of the Debtors' businesses.

8

O.      Based upon the record presented by the Debtors to this Court: (i) the terms of the DIP Facility and the provisions of the DIP Credit Agreement pertaining to security for the Existing Letters of Credit and Epayables Program are reasonable, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and the provisions of the DIP Credit Agreement pertaining to security for the Existing Letters of Credit and Epayables Program have been negotiated in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, and BOA, and any credit extended, letters of credit issued, loans made, and other financial accommodations extended to the Debtors by the DIP Agent, the DIP Lenders, and BOA shall be deemed to have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

P.      The Debtors and the Ad Hoc Noteholder Committee ‡‡ have agreed that the DIP Agent, on behalf of itself, the DIP Lenders and the lenders providing exit financing under the Plan (the "Exit Lenders"), shall have the right to review the proposed forms of the Corporate Governance Documents (as defined in the Plan), the New Equity Commitment Documents (as defined in the Plan), and every proposed amendment or supplement to the Plan. Each term in the Corporate Governance Documents and the New Equity Commitment Documents that adversely affects or could adversely affect the financial condition or performance of the reorganized Debtors or the ability of the reorganized Debtors to perform one or more of their respective obligations under the proposed Exit Facility (as defined in the Plan) must be acceptable to the DIP Agent, each DIP Lender, and each Exit Lender in the sole discretion of each. In addition, each proposed material modification or supplement to the Plan (excluding the terms of the proposed Corporate Governance Documents and New Equity Documents that are included in a modification or supplement, which are subject

9

solely to the review and approval rights in the foregoing sentence) that adversely affects or could adversely affect the financial condition or performance of the reorganized Debtors or the ability of the reorganized Debtors to perform one or more of their respective obligations under the proposed Exit Facility, must be acceptable to the Agent, each DIP Lender, and each Exit Lender in the sole discretion of each.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1.     <u>Grant of Motion.</u>   The Motion is granted as set forth in this Order.  Any objection not previously withdrawn is overruled.  This Order is effective immediately upon entry.  To the extent that a conflict exists between the terms of this Order and the DIP Financing Documents, this Order shall control.

2.     <u>Authorization to Borrow.</u>   Upon finalizing and executing the DIP Credit Agreement, a copy of which was attached to the Motion, and the other DIP Financing Documents described in the DIP Credit Agreement and made available at the hearing, and provided that the Debtors are not in default under the terms of this Order, the Debtors are authorized to immediately  (a) borrow (and engage in the other credit accommodations provided under the DIP Facility) from the DIP Agent and the DIP Lenders on an interim basis the principal amount of up to $45,000,000 outstanding at any time pursuant to the terms of the DIP Credit Agreement for the Debtors to continue to operate their businesses, and (b) borrow (and engage in other credit accommodations provided by BOA with respect to the Existing Letters of Credit and the Epayables Program) for the Debtors to continue to operate their businesses.  Upon execution and delivery, the DIP Financing Documents shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable against each such Debtor in accordance with their terms.  Consistent with the terms of the DIP Credit Agreement and the other DIP Financing

10

Documents, the Debtors may use advances under the DIP Facility as provided in the DIP Credit Agreement, including the payment of the Prepetition Indebtedness.

3.    DIP Facility Superpriority Claims.    For all of the Debtors' Obligations and indebtedness arising under the DIP Financing Documents ("DIP Facility Obligations"), BOA, the DIP Lenders, and the DIP Agent are granted, pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Facility Superpriority Claims as described in subparagraph (ii)(A) of the first paragraph of this Order (which claims shall be payable from and have recourse to, in addition to the Collateral, any unencumbered post-petition property of the Debtors), with the seniority, scope, and effect set forth in that subparagraph.

4.    DIP Facility Liens.    As security for the DIP Facility Obligations, pursuant to sections 364(c)(2), (c)(3), and (d) of the Bankruptcy Code, BOA and the DIP Agent, on behalf of itself and the DIP Lenders, are hereby granted (effective upon the date of this Order and without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, financing statements, or otherwise) the DIP Facility Liens, all with the perfection, seniority, scope, and effect set forth in subparagraphs (ii)(b) and (c) of the first paragraph of this Order.  Without limiting the generality of the preceding sentence, BOA, the DIP Agent, and the DIP Lenders shall have first priority security interests, and liens on, all of the "Collateral" as defined in the DIP Credit Agreement and as further described in the other DIP Financing Documents.  In the event of the occurrence of an event of default or similar event under the DIP Financing Documents (an "Event of Default"), or an event that would constitute an Event of Default with the giving of notice or lapse of time or both (a "Default"), such security interests and liens shall be subject to the payment of the Carve-Out.

11

5.      Letter of Credit and Epayables Liens.    For all of the Debtors' obligations

pertaining to the Existing Letters of Credit and arising under the Epayables Program, BOA shall

have first priority perfected security interests in the L/C Security Account and in the Epayables

Security Account, respectively, pursuant to the DIP Credit Agreement, the L/C Security

Agreement, and the Epayables Security Agreement

6.      Carve-Out.    The DIP Facility Superpriority Claims, the DIP Facility Liens, and

the Prepetition Lenders' liens in and to the Prepetition Collateral shall be subject only to the

payment of the following fees and expenses (the "Carve-Out"):  (x) fees to the Clerk of the Court

and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 and (y) subject in

each case to a cumulative, maximum, aggregate amount set forth below as the "Carve-Out

Amount," the unpaid and outstanding fees and disbursements actually incurred on or after the

Petition Date by the Debtors' Professionals (as defined in the DIP Credit Agreement) and

professionals for the official committee of unsecured creditors (the "Committee,"), if any,

appointed in the Chapter 11 Cases (collectively, the "Professionals") and allowed by order of this

Court pursuant to sections 326, 328, 330, or 331 of the Bankruptcy Code (collectively, the

"Allowed Professional Fees"); *provided, however,* that the Carve-Out shall not include, apply to,

or be available to any fees or expenses incurred by any party, including the Debtors or any

Committee, in connection with any of the following:  (a) an assertion, a joinder in, or the support

of (but excluding any investigation conducted prior to the assertion or joinder in) the initiation or

prosecution of any claims, causes of action, adversary proceedings, or other litigation against

BOA, the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders

including, without limitation, challenging the extent, amount, legality, validity, priority,

perfection, or enforceability of, or asserting any offset, defense, or counterclaim to, (i) the DIP

12

Facility Obligations or the security interests and liens of BOA or the DIP Agent in respect thereof, or (ii) the Prepetition Indebtedness, the Prepetition Credit Facility, the Prepetition Credit Agreement, or the security interests and liens of the Prepetition Agent and Prepetition Lenders in respect thereof, or asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against BOA, the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders, (b) a request to use Cash Collateral without the prior written consent of the DIP Agent and DIP Lenders, (c) a request for authorization to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code other than from BOA or the DIP Lenders, as the case may be, without the prior written consent of BOA or the DIP Lenders, or (d) any act or omission to act adverse to BOA, the DIP Agent, the DIP Lenders, or their respective rights and remedies under the DIP Credit Agreement and the other DIP Financing Documents or their interests in the Collateral that would, individually or in the aggregate, have a Material Adverse Effect (as defined in the DIP Credit Agreement). The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of BOA, the Debtors, the DIP Agent, the DIP Lenders, any Committee, the Ad Hoc Noteholders Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts. Any payment or reimbursement made either directly by or on behalf of BOA or the DIP Lenders at any time or by or on behalf of the Debtors on or after the occurrence of an Event of Default in respect of any Allowed Professional Fees or any other obligations relating to the Carve-Out shall, in either case, permanently reduce the Carve-Out on a dollar-for-dollar basis. The DIP Lenders' obligation to fund or otherwise pay the Carve-Out and any other claims entitled to payment under paragraphs 6 and 7 shall be added to and made a part of the DIP Facility Obligations, secured by the

Collateral, and shall entitle BOA, the DIP Agent, and the DIP Lenders to all of the rights, claims, liens, priorities, and protections under this Order, the DIP Financing Documents, the Bankruptcy Code, and applicable non-bankruptcy law. Payment of any obligations relating to the Carve-Out, whether by or on behalf of BOA or the DIP Lenders, shall not and shall not be deemed to reduce the DIP Facility Obligations and shall not and shall not be deemed to subordinate any of the DIP Facility Liens or the DIP Facility Superpriority Claims to any junior prepetition or postpetition lien, interest, or claim in favor of any other party. Except as otherwise provided herein with respect to the Carve-Out and the other claims entitled to payment under paragraphs 6 and 7, BOA, the DIP Agent, and the DIP Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Chapter 11 Cases or the Debtors' cases under any other chapter of the Bankruptcy Code, and nothing in this Order or otherwise shall be construed to obligate BOA, the DIP Agent, or the DIP Lenders, in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

7.     Carve-Out Amount.  For purposes of this order, the "Carve-Out Amount" for Allowed Professional Fees incurred on or after the Petition Date through the earlier of (a) the effective date of the Debtors' Prepackaged Plan of Reorganization (the "Plan") filed in these cases or (b) the date the DIP Agent issues a notice of an Event of Default (as defined in the DIP Credit Agreement) to any of the Debtors or their counsel (the "Pre-Default Period") is a maximum, cumulative, aggregate amount of $2,000,000, and after the DIP Agent issues any such notice of an Event of Default, is a maximum cumulative, aggregate amount of $500,000, less the amount of any retainer or other deposit or security held by any Professional at the time the notice of an Event of Default is issued. If during the Pre-Default Period the Debtors make one or more

14

requests in writing to the DIP Agent that the DIP Agent and the DIP Lenders increase the Carve-Out Amount applicable during the Pre-Default Period by not more than 10% in any single request, specifying the proposed new Carve-Out Amount for that period and the reasons for the requested increase, and the DIP Agent in its discretion does not object to the request within five business days after receipt of the request, the Carve-Out Amount for the Pre-Default Period will increase to the amount so requested by the Debtors.

8.      Allowance of Claims.  Consistent with the terms of the Plan, the consent of any impaired classes of claims, and the Debtors' intent to seek confirmation of the Plan at the earliest possible time, the claims of the Prepetition Agent and the Prepetition Lenders under the Prepetition Credit Facility, as secured by the Prepetition Collateral are deemed to be allowed, subject to the provisions of paragraph 9 of this order, and shall be paid from advances under the DIP Facility.

9.      Investigation Period.  Notwithstanding anything herein or in the DIP Loan Documents to the contrary, the Committee, if any, or other party in interest (except the Debtors or other parties consenting to the entry of this order) shall have until no later than the earlier of (i) 75 days after the Petition Date, (ii) the deadline established by the court for the filing of objections to confirmation of the Plan, and (iii) for any Committee, if formed, 60 days after the date of such Committee's formation (the "Investigation Termination Date") to investigate the validity, perfection, enforceability, extent of the Prepetition Indebtedness and Prepetition Liens, lender liability claims and causes of action, any actions, claims or defenses under chapter 5 of the Bankruptcy Code or any other claims or causes of action.  Any challenge pursuant to this paragraph must be made by a party in interest with standing properly commencing an adversary proceeding on or before the Investigation Termination Date.  If no such action is filed on or

15

before the Investigation Termination Date, all holders of claims and interests as well as other parties in interest shall be forever barred from bringing or taking any action, and the Debtors' stipulations and acknowledgements made in paragraphs ___ shall be binding on all parties in interest.

$\overset{\nabla}{D-H \text{ and } P}$

10.    Payment of Administrative Claims.  So long as no Default or Event of Default shall have occurred, the Debtors shall be permitted to pay Allowed Professional Fees incurred and allowed and payable to under sections 330 and 331 of the Bankruptcy Code, as the same may become due and payable, subject to the Carve-Out and the Carve-Out Amount; *provided, however,* that nothing contained in this Order or otherwise shall be construed to obligate BOA, the DIP Agent, or the DIP Lenders in any way to lend or advance any additional funds to the Debtors or provide other financial accommodations to the Debtors, upon or after the occurrence of an Event of Default or Default.

11.    Limitation on Additional Surcharges.  So long as the DIP Lenders are providing postpetition financing or otherwise allowing the use of Cash Collateral, with the exception of Carve-Out and fees payable pursuant to 28 U.S.C. § 1930 and to the Clerk of the Court, and subject to approval at the Final Hearing, neither the Collateral nor BOA, the DIP Agent, nor the DIP Lenders shall be subject to surcharge, pursuant to section 506(c) of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest, until all DIP Facility Obligations and Prepetition Indebtedness are indefeasibly paid in full in cash (or cash collateralized), without the prior written consent of BOA, the DIP Agent, and DIP Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by BOA, the DIP Agent, or the DIP Lenders in this proceeding, including, but not limited to, funding of the Debtors' ongoing operations by BOA, the DIP Agent, or the DIP Lenders.  Upon approval at the Final Hearing,

none of BOA, the DIP Agent, or the DIP Lenders shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

12.     Restrictions on Use of Proceeds. The Debtors may use the proceeds of the DIP Facility only for the purposes specifically set forth in the DIP Credit Agreement and other DIP Financing Documents.    Notwithstanding anything set forth herein or in the DIP Financing Documents to the contrary, no proceeds of the DIP Facility or any proceeds of the Collateral may be used by the Debtors or any other person or entity to (a) assert, join in, or support the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against BOA, the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders, including, without limitation, to challenge the amount, validity, extent, perfection, priority, or enforceability of, or assert any defense, counterclaim, or offset to, (i) the DIP Facility Obligations or the security interests and liens of BOA, the DIP Agent, and the DIP Lenders in respect thereof and/or (ii) the Prepetition Indebtedness or the security interests and liens of the Prepetition Agent and the Prepetition Lenders in respect thereof, or any other rights or interests of BOA, the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders, or assert any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against BOA, the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders, (b) request to use Cash Collateral (as defined in section 363 of the Bankruptcy Code) without the prior written consent of the DIP Lenders, (c) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code other than from BOA or the DIP Lenders without the prior written consent of BOA and the DIP Lenders, or (e) act or fail to act in a manner adverse to BOA, the DIP Agent, the DIP Lenders, or their rights and remedies under the DIP Credit Agreement or

17

their interests in the Collateral, which act or failure to act would, individually or in the aggregate, have a Material Adverse Effect.

13.     Commitment Termination Date.  The DIP Facility Obligations shall be due and payable, without notice or demand, on the Termination Date (as defined in the DIP Credit Agreement) (the "Commitment Termination Date").

14.     Fees and Expenses of BOA, the DIP Agent, and the DIP Lenders.  The Debtors shall, promptly following receipt of a written invoice which will also be provided to any official Committee, reimburse BOA, the DIP Agent, and the DIP Lenders for all their costs, fees (including reasonable attorneys' fees), charges, and expenses incurred (whether incurred prior to or after the Petition Date) in connection with the DIP Facility, any of the Financing Documents, or the Chapter 11 Cases, and the DIP Agent shall have the option of making an advance for the account of the Debtors under the DIP Credit Agreement to pay such costs, fees, charges, and expenses.  None of such costs, fees, charges, and expenses shall be subject to Court approval, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court, provided that the Court shall have jurisdiction to determine any dispute concerning such invoices.

15.     Restrictions on the Debtors.  Other than the Carve-Out, no claim having a priority superior or *pari passu* with those granted by this Order to BOA, the DIP Agent, and the DIP Lenders shall be granted or permitted by any order of the Court heretofore or hereafter entered in the Chapter 11 Cases, while any portion of the DIP Facility Obligations (or refinancing thereof) or any commitment under the DIP Credit Agreement or any other DIP Financing Document remains outstanding.  Except as expressly permitted by the DIP Credit Agreement, the Debtors will not, at any time during the Chapter 11 Cases, grant mortgages, security interests, or liens in

18

the Collateral or any portion thereof to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

16.    Additional Perfection Measures. BOA, the DIP Agent, and DIP Lenders shall not be required to file financing statements, mortgages, deeds of trust, notices of lien, or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted under the DIP Financing Documents and this Order (including, without limitation, the execution of any control, lock-box, deposit account, or similar documents or agreements). Notwithstanding the foregoing, BOA, the DIP Agent, and DIP Lenders may, in their sole discretion, file (or require the Debtors to execute and file) such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments or otherwise confirm perfection of such liens, security interests, and mortgages without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, and all such documents shall be deemed to have been filed or recorded at the time of and on the Petition Date and all recording fees and expenses shall be borne by the Debtors.

17.    Automatic Stay. Subject only to the provisions of the DIP Credit Agreement, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit BOA, the DIP Agent, and DIP Lenders, upon the occurrence and during the continuance of any Default or Event of Default, upon giving notice to the Company, counsel to the Ad Hoc Noteholders Committee, counsel to any Committee, and the U.S. Trustee, to take one or more of the following actions: (a) terminate the obligations of the Lenders to extend any further credit under the DIP Credit Agreement or the other DIP Financing Documents and (b) declare all outstanding obligations under the DIP Credit Agreement and the DIP Facility to be immediately due and payable. Additionally, the DIP Agent and the DIP

19

Lenders, by three business days' notice to the Company, the Ad Hoc Noteholders Committee, and the U.S. Trustee, may, in addition, to any other remedies to which they are entitled, enforce any and all rights and remedies available to the DIP Agent and DIP Lenders, and BOA under the Financing Documents or applicable law. During that three-day period, (a) the Company may continue to us its cash collateral strictly for the purpose of paying only usual and necessary operating expenses in the ordinary course of its business and consistent with its past practice; (b) the Company and the other Debtors will not under any circumstances fail to maintain their bank accounts, cash management accounts, checking accounts, savings accounts, and other accounts with the DIP Agent, or fail to cause all remittances, receipts, and other funds (in every form and from every source) they receive or obtain to be deposited into their accounts with the DIP Agent; and (c) the Debtors, any Committee, the Ad Hoc Noteholders Committee, or any other party in interest shall have the right to make an emergency application to the Court to seek a determination as to whether a Default or Event of Default has actually occurred and is continuing in accordance with the DIP Credit Agreement, any other DIP Financing Document, and this Order. Notwithstanding the occurrence of an Event of Default or the Commitment Termination Date or anything herein, all of the rights, remedies, benefits, and protections provided to BOA, the DIP Agent, and DIP Lenders under the DIP Financing Documents and this Order shall survive the Commitment Termination Date.

18. <u>Binding Effect</u>. The provisions of this Order shall be binding upon and inure to the benefit of BOA, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, the Debtors, and their respective successors and assigns. To the extent permitted by applicable law, this Order shall bind any trustee hereafter appointed for the estate of any Debtor, whether in these Chapter 11 Cases or in the event of the conversion of any Chapter 11 Case to a

liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Order.

19.   Survival.  The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order (i) confirming any plan of reorganization in any of the Chapter 11 Cases; or (iii) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Order as well as the DIP Facility Superpriority Claims and the DIP Facility Liens granted pursuant to this Order and the DIP Financing Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Order and the DIP Financing Documents and to the maximum extent permitted by law until all of the DIP Facility Obligations are indefeasibly paid in full and discharged (and, with respect to outstanding undrawn letters of credit issued pursuant to the DIP Credit Agreement, each collateralized in accordance with the provisions of the DIP Credit Agreement).

20.   Dismissal of Cases.  Unless all DIP Facility Obligations shall have been paid in full (and, with respect to outstanding undrawn letters of credit issued pursuant to the DIP Credit Agreement, cash collateralized in accordance with the provisions of the DIP Credit Agreement), it shall constitute an Event of Default if any of the Debtors seek, or if there is entered, an order dismissing any of the Chapter 11 Cases.  If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that the superpriority claims, liens, and security interests, replacement security interests, and other protections granted to BOA, the DIP Agent, and/or the DIP Lenders pursuant to this Order and the DIP Financing Documents shall continue in full force and effect and shall remain their priorities as provided in

21

this Order until all DIP Facility Obligations in respect thereof shall have been paid and satisfied in full (and that such superpriority claims, liens, and other protections, shall, notwithstanding such dismissal, remain binding on all parties in interest).

21.     After Acquired Property.    Except as otherwise provided in this Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Petition Date, including, without limitation, all Collateral pledged to the DIP Agent, on behalf of itself and the DIP Lenders, pursuant to the DIP Financing Documents and this Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date.

22.     Access to the Debtors.    Without limiting the rights of access and information afforded BOA, the DIP Agent, and DIP Lenders under the DIP Financing Documents, the Debtors shall permit representatives, agents, and employees of BOA, the DIP Agent, and DIP Lenders to have reasonable access to their premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such representatives, agents, and employees all such non-privileged information as they may reasonably request.

23.     Authorization to Act.    Each of the Debtors is authorized to do and perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages, and financing statements), and to pay fees and costs, which may be reasonably required or necessary for the Debtors' performance under the DIP Facility and this Order, including, without limitation:

22

(i)     the execution of the DIP Financing Documents;

(ii)    the modification or amendment of the DIP Credit Agreement or any other DIP Financing Document in a non-material manner without further order of this Court, in each case, in such form as BOA, the Debtors, the DIP Agent, and the DIP Lenders may agree (except for any modification or amendment to shorten the maturity of the extensions of credit thereunder, or increase the rate of interest or the letter of credit fees payable thereunder); *provided, however,* that notice of any such modification or amendment shall be provided to any Committee, the Ad Hoc Noteholders Committee, and the U.S. Trustee, each of which will have five business days from the date of such notice within which to object in writing; *provided further, however,* that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court; and

(iii)   the non-refundable payment to BOA, the DIP Agent, or the DIP Lenders, as the case may be, of the fees referred to in the DIP Credit Agreement and the other Financing Documents and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the DIP Financing Documents.

24.     Insurance Policies. Upon entry of this Order, the DIP Agent and DIP Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Collateral.

25.     Reserved.

23

26.    <u>Subsequent Reversal</u>.  If any or all of the provisions of this Order or the DIP Financing Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the consent of BOA, the DIP Agent, and the DIP Lenders: (i) such modification, vacatur, amendment, or stay shall not affect the validity of any obligation to BOA, the DIP Agent, or DIP Lenders that is or was incurred prior to the effective date of such modification, vacatur, amendment, or stay (the "Effective Date"), or the validity and enforceability of any security interest, lien, or priority authorized or created by this Order and the DIP Financing Documents; and (ii) the DIP Facility Obligations pursuant to this Order and the DIP Financing Documents arising prior to the Effective Date shall be governed in all respects by the original provisions of this Order and the DIP Financing Documents, and the validity of any such credit extended or security interest granted pursuant to this Order and the DIP Financing Documents is protected by section 364(e) of the Bankruptcy Code.

27.    <u>Final Hearing</u>.  This Order is set for a Final Hearing at   2:00 p.m.   (Prevailing Eastern Time) on   November 30, 2009   in this Court, at which time any party in interest may appear and state its objections. The notice provided by the Debtors of the Interim Hearing was provided in accordance with Bankruptcy Rule 4001(c)(2). The Debtors shall promptly mail copies of this Order and notice of the Final Hearing to the Service Parties. Any objection by a party-in-interest to the relief sought in the Final Order shall be made in writing and filed with the Court (with a courtesy copy to chambers) and served upon counsel for the Debtors, counsel for BOA, the DIP Agent, and the U.S. Trustee so as to be received no later than 5:00 p.m. (Prevailing Eastern Time) on   November 23, 2009   . If no objection is timely filed in accordance with the foregoing, the Court may grant the Motion and enter the Final Order without a hearing.

24

28.    Finding of Fact and Conclusions of Law.  This Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof.

29.    Controlling Effect of Order.  To the extent any provision of this Order conflicts with any provision of the Motion, any prepetition agreement, or any document executed in connection with the DIP Facility, the provisions of this Order shall control.

Dated: Wilmington, Delaware
       November __6__, 2009

KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

068731.1001