UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| LAZY DAYS' R.V. CENTER, INC., et al.,[1] ) | Case No. 09-13911 (KG) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |
| ) | Hearing Date: November 30, 2009 at 2:00 p.m. (ET) |
| ) | Objection Deadline: November 23, 2009 at 4:00 p.m. (ET) |

APPLICATION OF THE DEBTORS FOR ENTRY OF
AN ORDER AUTHORIZING THE DEBTORS TO
EMPLOY AND RETAIN MACQUARIE CAPITAL (USA) INC.
AS THEIR FINANCIAL ADVISOR, *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") file this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Code for the District of Delaware (the "Local Rules"), authorizing the Debtors to employ and retain Macquarie Capital (USA) Inc. ("Macquarie") as their financial advisor in connection with the above-captioned Chapter 11 Cases, *nunc pro tunc* to the Petition Date (as defined herein), in accordance with the Agreement (as defined herein). In support of this Application, the Debtors submit the declaration of Ford Phillips, Managing Director of Macquarie (the "Phillips Declaration"), a copy of which is

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Lazy Days' R.V. Center, Inc. (4794); LD Holdings, Inc. (1834); LDRV Holdings Corp. (6915); and RV Acquisition Inc. (1630). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 6130 Lazy Days Boulevard, Seffner, Florida 33584-2968.

attached hereto as **Exhibit B** and incorporated by reference herein. In support of this Application, the Debtors respectfully state as follows:

## Jurisdiction

1. The Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## Background

4. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. No committees have been appointed or designated. Concurrently with the filing of this Application, the Debtors have requested procedural consolidation and joint administration of the Chapter 11 Cases.

5. A description of the Debtors' businesses, the reasons for commencing these Chapter 11 Cases and the relief sought from this Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Randall Lay, Chief Financial Officer of Lazy Days' R.V. Center, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* filed contemporaneously herewith, and incorporated by reference as though fully set forth herein.

## The Proposed Prepackaged Plan

6. Prior to the Petition Date, after months of lengthy negotiations, the Debtors reached an agreement with their prepetition secured lenders, as well as an ad hoc committee (the

"Ad Hoc Noteholders Committee") of unaffiliated investors representing approximately 82% in principal amount of Lazy Days' R.V. Center, Inc.'s senior subordinated notes (the "Notes"), on the terms of a consensual, prepackaged plan of reorganization (the "Prepackaged Plan"). The Debtors commenced solicitation of the Prepackaged Plan, along with the accompanying disclosure statement (the "Disclosure Statement"), on September 4, 2009.

7. As set forth in the *Affidavit of Service and Declaration of Jane Sullivan of Financial Balloting Group, LLC Regarding Mailing, Voting and Tabulation of Ballots Accepting and Rejecting Proposed Joint Prepackaged Plan of Reorganization of Lazy Days' RV Center, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, filed contemporaneously herewith, the proposed Prepackaged Plan has been accepted well in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code. Specifically, the voting class voted to accept the Prepackaged Plan by over 99% in amount and 98% in number of those voting on the Prepackaged Plan. In addition to the overwhelming support received from those creditors who voted on the Prepackaged Plan, pursuant to a global settlement agreement, the Debtors' landlord and an individual noteholder holding approximately 11% in principal amount of the Notes (who either directly or indirectly owns the landlord) have each agreed not to oppose the Prepackaged Plan.

8. The Prepackaged Plan provides for a balance sheet restructuring that will eliminate 100% of the Debtors' $138 million of outstanding senior subordinated bond debt, thus reducing annual cash interest costs by approximately $16.2 million. The Prepackaged Plan also provides for payment in full of all general unsecured trade claims against the Debtors. The Debtors believe that such payment will allow them to continue their operations with minimal

disruption and preserve their enterprise value for the benefit of the Debtors' estates, creditors and all parties in interest.

### Relief Requested

9. By this Application, the Debtors seek entry of an order authorizing the Debtors to retain and employ Macquarie as their financial advisor, *nunc pro tunc* to the Petition Date, in accordance with the terms of that certain letter agreement dated November 25, 2008, as amended and restated on September 3, 2009 (the "Agreement"), a copy of which is attached hereto as **Exhibit C** and incorporated by reference herein.[2]

### Macquarie's Qualifications

10. Macquarie is a professional services firm focused on providing financial and investment banking advice and transaction execution on behalf of its clients. Macquarie's broad range of corporate advisory services includes services pertaining to restructurings, mergers and acquisitions, capital raises, project finance, privatizations and tailored strategic and financial advice.

11. Prior to retaining Macquarie, the Debtors' senior management interviewed senior personnel of and considered proposals from other financial advisory firms. The Debtors evaluated each firm on a number of criteria, including: the overall restructuring experience of each firm and their professionals; the overall financial advisory capabilities of each firm; the firm's experience in advising companies in chapter 11; the likely attention the Debtors will receive from the senior personnel of the firm; and the compensation to be charged. After due

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Agreement. The summary of the terms of the Agreement contained herein is provided for the benefit of the Court and parties in interest and, to the extent the summary set forth herein and the terms of the Agreement are inconsistent, the terms of the Agreement shall control.

consideration of the above and as an exercise of their business judgment, the Debtors concluded that Macquarie was qualified to provide financial advisory services to the Debtors at a reasonable level of compensation. The Debtors have selected Macquarie as their financial advisor based upon (a) Macquarie's extensive experience in providing financial advisory services in large and complex chapter 11 cases and (b) Macquarie's excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

12. Macquarie professionals have significant experience in restructuring matters in the United States. Such engagements have included providing financial advisory services to the debtors in *In re Delta Air Lines, Inc., et al.,* [Case No. 05-17923], the chapter 11 trustee in *In re Sentinel Management Group, Inc.*, [Case No. 07-14987], the senior lenders in *In re Refco, Inc., et al.,* [Case No. 05-60006], and the statutory committees of unsecured creditors in *In re Enron Corp.*, [Case No. 01-16034] and *In re USG Corporation, a Delaware Corporation, et al.,* [Case No. 01-2094].[3]

13. The compensation and indemnification arrangements provided for in the Agreement are consistent with and typical of arrangements entered into by Macquarie and financial advisory firms in connection with rendering similar services to clients such as the Debtors. The Debtors believe that Macquarie is well qualified and able to represent their interests in a cost effective, efficient and timely manner. Macquarie has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of this Court.

---

[3] On April 13, 2007 the Macquarie Group acquired the business of Giuliani Capital Advisors LLC. The restructuring experience of the Macquarie team, including the services in certain of these proceedings refers to transactions completed prior to the acquisition. Professionals that worked on those transactions are now employed by Macquarie.

14. As a result of the extensive prepetition work performed on behalf of the Debtors, Macquarie has acquired comprehensive knowledge of the Debtors and their businesses and is now familiar with the Debtors' financial affairs, debt structure, operations and related matters. Specifically, Macquarie's prepetition work on behalf of the Debtors has included, without limitation: (a) advising the Debtors on strategic alternatives including various financing and restructuring options; (b) reviewing and analyzing the Debtors' assets and their operating and financial strategies; (c) advising and negotiating on behalf of the Debtors with various constituents with respect to potential transactions, including in connection with the Prepackaged Plan, and (d) assisting the Debtors in structuring their debtor-in-possession and post-emergence financing. Indeed, due to its prepetition work on behalf of the Debtors, Macquarie is uniquely positioned to facilitate an orderly and efficient restructuring on behalf of the Debtors' estates.

15. An experienced financial advisor such as Macquarie fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals and advisors. The Debtors believe they require the services of a capable and experienced financial advisory firm such as Macquarie because, among other reasons, Macquarie's resources and capabilities, together with its prepetition experience advising the Debtors, are crucial to the Debtors' success in these Chapter 11 Cases.

**Services to Be Provided**

16. Pursuant to the Agreement, in addition to providing any additional financial services as the Debtors may request from time to time, Macquarie will assist in the evaluation of strategic alternatives and render financial advisory services to the Debtors in connection with these Chapter 11 Cases, including, without limitation:

> a. advising the Debtors with respect to available capital restructuring, sale or transaction alternatives, as and if necessary, including recommending

6
DB02:8908196.1                                                                                       068731.1001

specific courses of action and assisting with the design, structuring and negotiation of alternative restructuring and/or transaction structures; *provided, however,* that Macquarie shall not conduct any solicitation of votes in connection with such restructurings, sales or transaction alternatives;

b. advising the Debtors in preparing for, meeting with and presenting information to interested parties and their respective advisors, including the Company's senior lenders, holders of the 11.75% Senior Notes, due May 15, 2012 (the "Senior Notes"), and their respective advisors;

c. advising the Debtors in the development and execution of a restructuring plan and negotiation with parties in interest, as and if necessary;

d. advising the Debtors in preparing certain financial information and other materials that may be required by the Debtors' creditors, the Office of the United States Trustee for the District of Delaware, the Court and any other stakeholders in connection with the execution of a restructuring plan;

e. advising the Debtors in determining an enterprise valuation range for the Debtors;

f. providing testimony regarding Macquarie's financial analysis and any other relevant testimony in support of the Debtors' Prepackaged Plan;

g. providing other services as may be reasonably requested in writing from time to time by the Debtors or its counsel and agreed to by Macquarie over the course of the Chapter 11 Cases; and

h. providing the necessary support and financial advice in connection with the foregoing to the Debtors throughout the course of the Chapter 11 Cases.

## Professional Compensation

17. As set forth in the Agreement, the Debtors and Macquarie have agreed to the following compensation structure (the "Fee and Expense Structure") in consideration for the Services to be rendered by Macquarie in these Chapter 11 Cases:[4]

---

[4] For a more detailed description of the Fee and Expense Structure, please see the Agreement, which is attached hereto as **Exhibit C**.

(i) <u>Monthly Advisory Fee</u>: Unless otherwise ordered by the Court, a monthly fee of $100,000 (the "<u>Monthly Advisory Fee</u>") shall be paid at the end of each successive thirty (30) day period starting on May 1, 2009 until termination of the Agreement.

(ii) <u>Project Fee</u>: On the earlier to occur of (i) December 31, 2009 or (ii) the consummation of a Transaction (as defined below), the Debtors shall pay Macquarie a fee in the amount of $1,400,000 (the "<u>Project Fee</u>") regardless of whether or not a Transaction has occurred.[5] "Transaction" is defined as the consummation of any of the following: (a) a restructuring, refinancing, recapitalization, exchange offer or other material modification of the Senior Notes, including without limitation pursuant to a repurchase or an exchange transaction, a plan of reorganization (including with respect to a prepackaged or prearranged plan of reorganization or other plan pursuant to the Bankruptcy Code), (b) a merger or sale of all or substantially all of the stock (or other equity interests) or assets of the Debtors (regardless of the form that such transaction shall take) during the term of the Agreement or (c) the effective date of a plan of reorganization under the Bankruptcy Code. The Project Fee is subject to offset a portion of prepetition and postpetition monthly advisory fees, including any fees paid prior to May 2009.

18. The Debtors have also agreed to reimburse Macquarie for certain reasonable out of pocket expenses incurred in connection with the performance of the engagement, including, but not limited to, out of pocket expenses incurred in connection with travel, out-of-town accommodations and meals, overnight delivery and database access charges; *provided, however,* that individual expenses in excess of $2,500 will require prior written approval of the Debtors. To the extent that the Debtors request that Macquarie perform additional services not contemplated by the Agreement, the scope and fees for such services shall be mutually agreed upon by Macquarie and the Debtors, in writing, in advance of any performance of such services.

19. The overall compensation structure described above is comparable to compensation generally charged by financial advisory firms of similar stature to Macquarie and

---

[5] Fifty percent (50%) of the aggregate amount of all Monthly Advisory Fees received by Macquarie (including Monthly Advisory Fees paid prior to May 1, 2009, which total approximately $730,834), under the Agreement shall be credited against the Project Fee.

for comparable engagements, both in and out of court. To induce Macquarie to do business with the Debtors in bankruptcy, the Fee and Expense Structure was established to reflect the difficulty of the extensive assignments Macquarie has undertaken and expects to undertake. The Fee and Expense Structure has also been established in light of the fact that Macquarie's retention by the Debtors in these Chapter 11 Cases may foreclose other opportunities for Macquarie and that the actual time required to perform services under the Agreement may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

20. The Debtors acknowledge and agree that Macquarie's restructuring expertise, as well as its knowledge of the capital markets, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of Macquarie's engagement, were important factors in determining the amount of fees payable to Macquarie, and that the ultimate benefit to the Debtors of Macquarie's services could not be measured merely by reference to the number of hours to be expended by Macquarie's professionals in the performance of such services.

21. In addition, given the numerous issues which Macquarie may be required to address in the performance of its services hereunder, Macquarie's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Macquarie's services for engagements of this nature in an out of court context, as well as in chapter 11, the Debtors submit that the fee arrangements in the Agreement are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

22. As Macquarie does not customarily maintain detailed time records similar to those customarily maintained by attorneys, and because Macquarie's services would not be compensated by reference to the number of hours and the Agreement provides that Macquarie

shall receive certain fixed fees as defined in paragraph 16 above, the Debtors request a waiver of the requirement that Macquarie maintain time records for services rendered to the Debtors pursuant to Local Rule 2016-2(g).

23. Macquarie has not shared or agreed to share any of its compensation from the Debtors with any other person, other than other principals and employees of Macquarie, as permitted by section 504 of the Bankruptcy Code.

### Indemnification

24. As part of the overall compensation payable to Macquarie under the terms of the Agreement, the Debtors have agreed to certain indemnification obligations. The Agreement specifies that the Debtors will indemnify and hold harmless Macquarie and its affiliates, and their respective directors, officers, managers, members, partners, employees, agents and controlling persons (Macquarie and each such person being an "Indemnified Party") from and against any losses, claims, damages, liabilities or expenses, joint or several, to which any Indemnified Party may become subject in connection with the restructuring, restructuring services, any transactions contemplated by the Agreement or the engagement of Macquarie pursuant to, and the performance by Macquarie of the services contemplated by, the Agreement. As part of this Application, the Debtors request that the Court approve the indemnification provisions, subject to the modifications set forth in the order attached herein.

### No Duplication of Services

25. The Debtors intend that Macquarie's services will complement, and not duplicate, the services to be rendered by any other professional retained by the Debtors in these Chapter 11 Cases. Pursuant to the Agreement, Macquarie understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work

10
DB02:8908196.1                                                                                                                              068731.1001

cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## Macquarie's Disinterestedness

26. Macquarie has informed the Debtors that, as set forth in the Phillips Declaration, Macquarie is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and does not hold or represent an interest materially adverse to the Debtors' estates. Macquarie has reviewed its databases and provided disclosure in the Phillips Declaration of its connections with potential parties in interest.

27. Macquarie will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Macquarie will use reasonable efforts to promptly provide the Court with a supplemental declaration.

## Basis for Relief

A. **The Debtors Should be Permitted to Retain and Employ Macquarie on the Terms in the Agreement Pursuant to Section 328 of the Bankruptcy Code.**

28. The Debtors seek approval of the Fee and Expense Structure pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer . . . ." 11 U.S.C. § 328(a). Consequently, section 328(a) of the Bankruptcy Code permits the Court to approve the terms of Macquarie's engagement as set forth in the Agreement, including the Fee and Expense Structure and indemnification provisions.

DB02:8908196.1　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　068731.1001

29. Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors who, among other things serve as testifying experts, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit has recognized:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*In re Nat'l Gypsum Co.*, 123 F.3d 861, 862 (5th Cir. 1997) (internal citations omitted).

30. Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, <u>on a fixed percentage fee basis, or on a contingent fee basis</u>.

11 U.S.C. § 328(a) (emphasis added). Section 328(a) of the Bankruptcy Code, as amended, now makes clear that debtors may retain, subject to bankruptcy court approval, a professional on a fixed-fee basis such as the Fee and Expense Structure with Macquarie as proposed by the Debtors herein.

31. As set forth above, the Fee and Expense Structure appropriately reflects the nature and scope of services to be provided by Macquarie and Macquarie's substantial experience with respect to the services they have been providing and will continue to provide the Debtors, and is

12

consistent with the fee structures typically utilized by Macquarie and other leading financial advisors, who do not bill their clients on an hourly basis.

32. Similar fixed fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this district. *See, e.g., In re Tropicana Entm't, LLC*, No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008); *In re Leiner Health Prods., Inc.*, No. 08-10446 (KJC) (Bankr. D. Del. April 8, 2008) (order authorizing retention of Houlihan Lokey Howard & Zukin Capital, Inc. on similar terms); *In re FLYi, Inc.*, No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); *In re Foamex Int'l, Inc.*, No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); *In re Granite Broad. Corp.*, No. 06-12984 (ALG) (Bankr. S.D.N.Y. Feb. 13, 2007) (order authorizing the retention of Houlihan Lokey Howard & Zukin Capital, Inc.); *In re The Nat'l Benevolent Ass'n of the Christian Church (Disciples of Christ)*, No. 04-50948 (RBK) (Bankr. W.D. Tex. Feb. 16, 2004) (order authorizing employment of Houlihan Lokey Howard & Zukin Capital, Inc.); *In re Oakwood Homes Corp.*, No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC); *In re Interdent Serv. Corp.*, No. 03-13594 (JR) (Bankr. C.D. Cal. May 9, 2003) (order authorizing employment of Houlihan Lokey Howard & Zukin Capital); *In re Dairy Mart Convenience Stores, Inc.*, No. 01-42400 (AJG) (Bankr. S.D.N.Y. Sept. 24, 2001) (order authorizing employment and retention of Houlihan Lokey Howard & Zukin Capital, Inc.); *In re United Artists Theatre Co.*, No. 00-3514 (SLR)

(Bankr. D. Del. Dec. 1, 2000) (order authorizing indemnification of Houlihan Lokey Howard & Zukin Capital, Inc.).[6]

33. Moreover, the terms and conditions of the Agreement, including the provisions relating to indemnification, were negotiated by the Debtors and Macquarie at arm's-length and in good faith. In light of the foregoing, and given the numerous issues that Macquarie may be required to address in the performance of its services hereunder, Macquarie's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Macquarie services for engagements of this nature, the Debtors believe that the terms and conditions of the Agreement are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code. Accordingly, the Debtors submit that Macquarie's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

34. Additionally, the Debtors and Macquarie submit that the indemnification provision in the Agreement (as modified by the proposed order): (a) is a standard provision, both in and outside of chapter 11 cases; (b) reflects the qualifications and limits on indemnification provisions that are customary in Delaware and other jurisdictions; (c) when viewed in conjunction with the other terms of Macquarie's proposed retention, is reasonable and in the best interests of the Debtors' estates, creditors and all parties in interest; and (d) is consistent with provisions regularly approved by courts in this and other districts under circumstances similar to these. *See, e.g., In re FLYi, Inc.*, No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC); *In re Foamex Int'l,*

---

[6] Because of the voluminous nature of the orders cited herein, they are not attached to the Application. Copies of these orders are available on request of the Debtors' counsel.

*Inc.*, No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC); *In re Oakwood Homes Corp.*, No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC); *In re United Artists Theatre Co.*, No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000) (order authorizing indemnification of Houlihan Lokey Howard & Zukin Capital, Inc.); *see also In re Dunmore Homes, Inc.*, No. 07-13533 (MG) (Bankr. S.D.N.Y. Dec. 20, 2007) (order authorizing retention of Alvarez & Marsal North America LLC and Alvarez & Marsal Securities LLC); *In re Granite Broad. Corp.*, No. 06-12984 (ALG) (Bankr. S.D.N.Y. Feb. 13, 2007) (order authorizing the retention of Houlihan Lokey Howard & Zukin Capital, Inc.).[7]

**B.    The Retention of Macquarie Is Critical to the Debtors' Success.**

35.    Denial of the relief requested herein will deprive the Debtors of the assistance of uniquely qualified financial advisors and, certainly, would effect an unjust disadvantage to the Debtors and all parties in interest. Indeed, the Debtors would be forced to engage new financial advisors who lack such a thorough understanding of the Debtors' businesses and the restructuring initiatives that have been implemented over the course of the last year and which will continue through the pendency of these Chapter 11 Cases. Hiring a substitute financial advisor would require the commitment of significant resources in familiarizing such substitute with the Debtors' background and financial information and delay resolution of these Chapter 11 Cases. Further, comparable financial advisors would charge an equivalent, if not higher, level of fees.

---

[7] Because of the voluminous nature of the orders cited herein, they are not attached to the Application. Copies of these orders are available on request of the Debtors' counsel.

36. The daily pressures of the chapter 11 process generally make it highly unlikely that any substitute advisor would be in a position to duplicate Macquarie's superior expertise and knowledge of the Debtors' businesses and operations. Accordingly, the Debtors respectfully submit that the services provided by Macquarie are critical to the Debtors' estates and request that the Court approve the terms and conditions of the Agreement in substantially the form attached hereto.

### Notice

37. The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agent for the Debtors' proposed debtor-in-possession credit facility; (d) counsel to the agent for the Debtors' prepetition secured credit facility; (e) the indenture trustee for the Debtors' Notes; (f) counsel to the Ad Hoc Noteholders Committee; (g) the Internal Revenue Service; and (h) the Securities and Exchange Commission. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

### No Prior Request

38. No prior Application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors request that the Bankruptcy Court grant the relief requested herein and such other and further relief as is just and proper.

Date: November 6, 2009  LAZY DAYS' R.V. CENTER, INC. et al.
      Wilmington, Delaware

_____
Randall Lay
Chief Financial Officer, Lazy Days' R.V. Center, Inc.