IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| LAZY DAYS' R.V. CENTER, INC., et al.,[1] ) | Case No. 09-13911 (KG) |
| ) | |
| Reorganized Debtors. ) | Jointly Administered |
| ) | |
| ) | **(Requested) Obj. Deadline: June 10, 2011 at 4:00 p.m.** |
| ) | **(Requested) Hearing Date: June 13, 2011 at 4:00 p.m.** |

**EMERGENCY MOTION OF REORGANIZED DEBTORS FOR
ORDERS (I) REOPENING CHAPTER 11 CASES, AND
(II) ENFORCING THE TERMS OF CONFIRMATION ORDER AND PLAN**

Lazy Days' R.V. Center, Inc. ("Lazy Days'") and LDRV Holdings Corp. ("LDRV Holdings," and together with Lazy Days', the "Reorganized Debtors") hereby file this emergency motion (the "Motion")[2] for entry of orders (i) reopening the above-captioned chapter 11 cases (the "Chapter 11 Cases") for the limited purpose of permitting the Reorganized Debtors to adjudicate this Motion and obtain appropriate relief, and (ii) enforcing certain terms and provisions of this Court's *Findings of Fact, Conclusions of Law and Order (I) Approving the Debtors' (A) Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code, (B) Solicitation of Votes and Voting Procedures, and (C) Forms of Ballots, and (II) Confirming the Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 92] (the "Confirmation Order") and the *Joint Prepackaged Plan of Reorganization of Lazy Days' R.V. Center, Inc. and its Debtor Affiliates Under Chapter 11 of*

---

[1] The Reorganized Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Lazy Days' R.V. Center, Inc. (4794) and LDRV Holdings Corp. (6915). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 6130 Lazy Days Boulevard, Seffner, Florida 33584-2968.

[2] Contemporaneously herewith, the Reorganized Debtors are filing the *Reorganized Debtors' Motion for an Order Shortening the Time for Notice of Emergency Motion of Reorganized Debtors for Orders (I) Reopening Chapter 11 Cases, and (II) Enforcing the Terms of Confirmation Order and Plan* (the "Motion to Shorten").

*the Bankruptcy Code* [Docket No. 15] (the "Prepackaged Plan"), as set forth herein. In further support of this Motion, the Reorganized Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      In late 2009, the Reorganized Debtors implemented a near picture perfect prepackaged bankruptcy proceeding, shedding burdensome prepetition debt and successfully emerging from chapter 11 in less than two months. The Reorganized Debtors are the nation's largest distributors of recreational vehicles – RVs -- and have one of the largest, if not the largest, RV campground in the nation. As is customary in a reorganization, the Reorganized Debtors assumed most of their key leases and contracts "as is" in order to continue operating with minimal disruption to their core activities while they right-sized their balance sheet. The Lease and Settlement Agreement (each as defined herein) were among those assumed agreements, as they relate to the Reorganized Debtors' primary facility in Florida and were, thus, key to the ultimate success of the reorganization efforts embodied by and enacted through the Prepackaged Plan. In fact, the reorganization eventually proved so successful that the Reorganized Debtors found themselves in the tremendously fortunate position of being able to exercise the purchase option (the "Purchase Option") contained in the Lease so that they could own the entirety of their operational facility going forward.

2.      However, through a curious exercise of reverse logic and despite the clear and unequivocal assumption of the Lease without even the slightest tweak to its terms, the Landlord (as defined below) under the Lease is taking the position that the Purchase Option somehow did not survive the Chapter 11 Cases and the attempt to exercise the option is consequently invalid. It could not be clearer that the law requires parties who assume contracts in bankruptcy take them with all burdens and benefits contained in the documents. The

2

Landlord's attempt to strip the Reorganized Debtors of a critical right under the Lease based upon the "nature of the transfer" accomplished through the Prepackaged Plan and Confirmation Order during the Chapter 11 Cases is nothing more than an attempt to invoke an assignment restriction in direct contravention of 11 U.S.C. § 365(f). Consequently, the Reorganized Debtors respectfully request that this Court reopen the Chapter 11 Cases and issue an order enforcing the terms of the Confirmation Order as it relates to the assumption and assignment of the Lease.

## JURISDICTION AND VENUE

3.   This Court has jurisdiction over this Motion pursuant to 28 U.SC. §§ 157 and 1334, paragraph 46 of the Confirmation Order and Article XII of the Prepackaged Plan. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are section 350 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 5010 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

A.   **Procedural Background**

4.   On November 5, 2009 (the "Petition Date"), each of the Reorganized Debtors, together with certain other debtor affiliates, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.   Prior to the Petition Date, after months of lengthy negotiations, the Debtors reached an agreement with their prepetition secured lenders, as well as an ad hoc committee of unaffiliated investors representing approximately 82% in principal amount of Lazy Days' R.V. Center, Inc.'s senior subordinated notes, on the terms of a consensual, Prepackaged Plan.[3]

---

[3]   Capitalized terms not defined herein shall have the meanings provided for them in the Prepackaged Plan.

6. The Prepackaged Plan provided for a balance sheet restructuring that eliminated 100% of the Reorganized Debtors' $138 million of outstanding senior subordinated bond debt, thus reducing annual cash interest costs by approximately $16.2 million. The Prepackaged Plan also provided for payment in full of all pre-petition general unsecured trade claims, and the assumption of substantially all executory contracts and unexpired leases.

7. The Prepackaged Plan was confirmed on December 8, 2009 upon entry of the Confirmation Order, and went effective on December 22, 2009 (the "Effective Date"). This Court entered an order closing the Chapter 11 Cases on March 22, 2010 [Docket No. 150].

**B.    Relevant Factual Background**

8. I-4 Land Holding Limited Company, LLC ("I-4" or the "Landlord") is the Reorganized Debtors' landlord pursuant to that certain Ground Lease, originally executed in 1999 and subsequently amended in 2004 and 2006 (as amended, the "Lease").[4]

9. Prior to the Petition Date, I-4 and the Debtors were engaged in litigation in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "Florida Court") regarding (i) the clarification of certain rent provisions with respect to the Lease and (ii) the reimbursement of excess rent that was demanded by and paid to I-4 (the "Pre-Petition Litigation").

10. Ultimately, immediately prior to the Petition Date, the Reorganized Debtors agreed to a resolution of the Pre-Petition Litigation with I-4, under the terms set forth in that certain Global Settlement and Lease Assumption Agreement, dated as of October 30, 2009 (the "Settlement Agreement, and together with the Lease, the "Operative Documents"),[5] in order

---

[4]    A copy of the Lease, inclusive of amendments (the "First Amendment" and "Second Amendment," respectively, is attached hereto as Exhibit A.

[5]    A copy of the Settlement Agreement is attached hereto as Exhibit B.

to avoid any disruptions of their Chapter 11 Cases and their pursuit of confirmation of the Prepackaged Plan. Under the Settlement Agreement, the Reorganized Debtors agreed to dismiss the Pre-Petition Litigation, to assume the Lease and Settlement Agreement through the Chapter 11 Cases, and to resolve all potential disputes between the Reorganized Debtors and I-4 regarding the Prepackaged Plan and the conduct of the Chapter 11 Cases.

11. Pursuant to the Confirmation Order, the Lease and Settlement Agreement were both assumed. See Confirmation Order, ¶25.[6]

12. On May 4, 2011, LDRV Holdings exercised its option to purchase the Demised Premises and Improvements (as those terms are defined in the Lease) from Landlord in accordance with section 33.3 of the Lease.[7]

13. On May 12, 2011, LDRV Holdings submitted a written offer to purchase the Demised Premises and Improvements to the Landlord, thereby triggering a thirty (30) day period for the good faith negotiations provided for under the Lease.

14. On May 27, 2011, the Landlord issued a letter to LDRV Holdings in which the Landlord asserted, among other things, that there was no right of LDRV Holdings to exercise the Purchase Option, that LDRV Holdings did not assume the Purchase Option, and that any Purchase Option did not survive the proceedings in the Chapter 11 Cases.

15. On June 1, 2011, LDRV Holdings delivered its letter in response to the Landlord and pointed out the documentation in connection with confirmation of the Prepackaged

---

[6] Relevant portions of the Confirmation Order and Prepackaged Plan are attached hereto as Exhibits C and D, respectively. The Reorganized Debtors are not attaching the entirety of these documents due to their volume and availability on the Court's docket.

[7] The description of the dispute before the Florida Court is provided for background purposes only. The Reorganized Debtors are not requesting this Court to adjudicate any issues related to the exercise of the Purchase Option other than the effect of 11 U.S.C. § 365(f) on the anti-assignment provision of the Lease.

Plan, including the Settlement Agreement, which evidenced both the assignment and right to exercise the Purchase Option by LDRV Holdings and the Landlord's consent thereto. LDRV Holdings also noted that it would place cash commensurate with the amount of rent that would otherwise have been due on June 1, 2011, but for the exercise of the Purchase Option, in a segregated interest bearing account.

16. In a letter mis-dated May 27, 2011 (but received on June 2, 2011), the Landlord advised LDRV Holdings it was in default for the non-payment of rent under the Lease. On June, 6, 2011, LDRV Holdings tendered an amount equal to the amount of the June 1, 2011 rent under protest to be applied to the purchase of the property in connection with the exercise of the Purchase Option. As of the time this Motion was filed, Landlord offered no response to such payment under protest.

17. Contemporaneously herewith, LDRV Holdings is initiating an action in the Florida Court to, among other things, compel specific performance by the Landlord of the terms and conditions of the Lease, including the Purchase Option (the "Florida Action").

## RELIEF REQUESTED

18. The Reorganized Debtors, by this Motion, respectfully request entry of orders: (i) reopening the Chapter 11 Cases for the limited purpose of permitting the Reorganized Debtors to adjudicate this Motion and obtain appropriate relief, and (ii) enforcing certain terms and provisions of the Confirmation Order and the Prepackaged Plan, including, but not limited to, paragraph 25 of the Confirmation Order and Article VI.B. of the Prepackaged Plan, specifically as each pertains to section 13.1 of the Lease, and that the assumption of the Lease pursuant to the Prepackaged Plan under section 365(a) of the Bankruptcy Code did not modify the terms of the Lease upon assignment.

**BASES FOR RELIEF REQUESTED**

I. **THE CHAPTER 11 CASES SHOULD BE REOPENED FOR THE LIMITED PURPOSE OF ADJUDICATING THIS MOTION**

19. Bankruptcy Rule 5010 provides, in relevant part, that "[a] case may be reopened on motion of the debtor or other party of interest pursuant to § 350(b) of the Code." Fed. R. Bankr. P. 5010. According to the Advisory Committee Notes to the 1991 Amendments to Bankruptcy Rule 3022, "[a] final decree closing the case . . . does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code."

20. Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause. 11 U.S.C. § 350(b).

21. Here, sufficient cause exists to reopen the Chapter 11 Cases. As evidenced by its correspondence of May 27th (the "May 27 Letter"),[8] the Landlord contends that the Purchase Option was inexplicably excised from the Lease by virtue of the assumption and assignment of the Lease under section 365(a) of the Bankruptcy Code. The Landlord's primary argument is directly contrary to section 365(f) of the Bankruptcy Code. The Landlord has taken this position notwithstanding the clear language of section 365(f) and its supporting case law, as well as the equally explicit terms of the Prepackaged Plan, this Court's Confirmation Order, and the Operative Documents that were entered into in connection with the Prepackaged Plan. As such, the reopening of these Chapter 11 Cases is necessary to fully implement and consummate the provisions of the Prepackaged Plan, as well as to preserve the integrity of this Court's Confirmation Order.

---

[8] A copy of the Landlord's May 27 Letter (without exhibits) is attached hereto as Exhibit E.

7

22. Further, Article XII of the Prepackaged Plan expressly provides that the Court will retain jurisdiction to, among other things, (a) resolve matters related to the assumption and assignment of any unexpired leases, (b) enter orders that may be necessary to implement or consummate the provisions of the Prepackaged Plan, including documents created in connection with the Prepackaged Plan, and (c) hear disputes arising in connection with the interpretation, implementation or enforcement of the Confirmation Order and/or Plan. See Plan at Article XII, ¶¶ 3, 8, 20. Accordingly, the Court is clearly vested with jurisdiction over this matter.

23. Finally, the decision to reopen a debtor's case rests within this Court's discretion. In re Mattera, 203 B.R. 565, 568 (D.N.J. 1997); see also Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir. 1997) (reviewing lower court's decision whether to reopen a chapter 11 case based on an abuse of discretion standard).

24. Thus, in light of the Landlord's refusal to abide by the clear terms of the Prepackaged Plan, Confirmation Order, and Operative Documents entered into in connection therewith, it is warranted and appropriate for this Court to reopen these Chapter 11 Cases to allow for the adjudication of this Motion and any related pleadings.

## II. THE PURCHASE OPTION WAS ASSUMED AND ASSIGNED BY THE REORGANIZED DEBTORS PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE

25. As noted above, the Landlord has taken the position that the Purchase Option "was not assumed and did not survive the proceedings and transactions that occurred in the Lazy Days' Chapter 11 case." See Landlord's May 27 Letter. While clarity is markedly lacking in the Landlord's position, it appears that Landlord contends Lazy Days' assumed parts of the Lease but not all of it. For the reasons below, this position is without merit.

26. It is well-settled that a debtor must assume an executory contract or unexpired lease *cum onere* and without any change. In re ANC Rental Corp., 277 B.R. 226, 238 (Bankr. D. Del. 2002); see also Schlumberger Resource Mgmt. Servs., Inc. v. Cellnet Data Sys., Inc. (In re Cellnet Data Sys., Inc.), 327 F.3d 242, 249 (3d Cir. 2003) (noting that "[t]he election to assume a lease "is an all-or-nothing proposition-- either the whole contract is assumed or the entire contract is rejected."). An assignment under section 365(a) of the Bankruptcy Code places the assignee into the shoes of the assignor with respect to the assignor's rights under the lease. Medronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 60 (3d Cir. 2001). The underlying terms of the lease are not modified; an assignment under section 365(a) merely changes "who performs the obligation, not the obligation performed." Id.

27. In this case, the Lease to which Debtor Lazy Days' was a party contained a Purchase Option. When Lazy Days' assumed the Lease, it assumed the entire Lease, including the Purchase Option, and when it assigned the Lease to LDRV Holdings, it assigned the entire Lease, including the Purchase Option. To argue otherwise is contrary to section 365(a) of the Bankruptcy Code and Third Circuit law.

28. In addition, the Landlord's contention that the Purchase Option was not assigned to LDRV Holdings as part of the Lease is not supported by the facts. Nothing in the Operative Documents, including the Settlement Agreement, modified the terms of the Lease to omit the Purchase Option. More specifically, the Settlement Agreement makes it clear that other than the First Amendment and Second Amendment, neither of which eliminated the Purchase Option from the Lease, "there are no other Amendments or modifications to the Lease." See Settlement Agreement, Recital B. In addition, paragraph 14 of the Settlement Agreement provides that "[e]xcept as otherwise provided in this Agreement, there is no intent, nor is the

Lease modified in any respect and the Lease and all terms and conditions thereof remain in full force and effect." See id. at ¶ 14. Finally, the Confirmation Order provides that "Debtor Lazy Days shall assume and assign the I-4 Lease Agreement (the "Lease") to Debtor LDRV Holdings, and the Debtor LDRV Holdings *shall be bound by all terms, conditions and obligations* of the Lease, including but not limited to, payment of rental amounts and compliance with other Lease terms as clarified and specified in the I-4 Settlement Agreement." See Confirmation Order, ¶ 25 (emphasis supplied).

29. Thus, when Lazy Days' assumed the Lease and assigned it to LDRV Holdings pursuant to section 365 of the Bankruptcy Code, the former assumed the entire Lease, including the Purchase Option contained in section 33.3 thereof. Therefore, the Court should enter an order enforcing the assignment of the Lease as contemplated by the Confirmation Order and further enforcing the terms of the Prepackaged Plan with respect to same.

### III. FAILURE TO ENFORCE THE CONFIRMATION ORDER AS IT PERTAINS TO THE PURCHASE OPTION PROVISION IN SECTION 33.3 OF THE LEASE WOULD PERMIT LANDLORD THE BENEFIT OF AN UNENFORCEABLE RESTRICTION ON ASSIGNMENT UNDER SECTION 365(f)(3) OF THE BANKRUPTCY CODE

30. The Landlord further asserts that even if the Purchase Option was assumed by Lazy Days' in the first instance, the Purchase Option was forever extracted from the Lease because of the assignment of the Lease to LDRV Holdings in the Chapter 11 Cases, an assignment that the Landlord contends (notwithstanding section 365(f) of the Bankruptcy Code) would render the Purchase Option invalid. Specifically, the Landlord argues that because the Reorganized Debtors obtained its consent to assume and assign the Lease through the Chapter 11 Cases, the Lease was assigned under Section 13.1 of the Lease (the Lease's *anti-assignment* provision), thereby triggering the loss of the Purchase Option under section 33.3 of the Lease.

See Landlord's May 27 Letter. For the reasons set forth below, giving effect to this provision of the Lease would constitute an unenforceable modification of the Lease under section 365(f)(3) of the Bankruptcy Code.[9]

> 31. Section 365(f)(3) of the Bankruptcy Code provides that:
>
> [n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

11 U.S.C. § 365(f)(3).

> 32. As noted above, the "the Bankruptcy Code . . . does not alter the rights of the parties in connection with the assignment of a lease or contract after its assumption by a debtor." In re David Orgell, Inc., 117 B.R. 574, 576 (Bankr. C.D. Cal. 1990). To that end, Congress enacted section 365(f)(3) of the Bankruptcy Code to prevent modifications of the terms of a lease or contract upon assignment that would result in the assignee receiving a different agreement than the assignor originally assumed. See South Coast Plaza v. Standor Jewelers West, Inc. (In re Standor Jewelers West, Inc.), 129 B.R. 200, 202 (B.A.P. 9th Cir. 1991) (noting that "[t]he legislative history of § 365(f) states that contractual provisions that modify the terms of a lease upon assignment are invalid, as contrary to the rehabilitative policies of the Bankruptcy Code."); In re David Orgell, 117 B.R. at 576 (noting that "[t]he clear import of section 365(f)(3) is to invalidate any provision of an executory contract or unexpired lease which

---

[9] As indicated above, LDRV Holdings has commenced (or will soon commence) the Florida Action. The Reorganized Debtors have attempted to limit the proceedings before this Court to solely those matters that directly implicate the effect of the Prepackaged Plan, Confirmation Order and Bankruptcy Code on the assumption and assignment of the Lease. The Reorganized Debtors reserve all rights in connection with any other arguments that are advanced in connection with the Florida Action, including but not limited to, that the assumption and assignment contemplated by the Prepackaged Plan are in compliance with section 13.2 of the Lease.

11

burdens the debtor's ability to make an effective assignment by modifying its terms so that the assignee receives a different agreement than the debtor had."); see also L.R.S.C. Co. v. Rickel Homes Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 291, 299 (3d Cir. 2000) (noting that section 365(f) "prohibits the termination or modification of executory contracts or unexpired leases notwithstanding lease or contract provisions or applicable law that permit termination or modification because of assignment of the lease.").

33.     Bankruptcy courts have also utilized "section 365(f)(3) to invalidate lease provisions that are 'designed to impede a tenant's ability to assign . . . an unexpired lease . . . by imposing economic impediments to assignment.'" Double K. Properties, LLC v. Aaron Rents, Inc., 2003 U.S. Dist. LEXIS 11940, *6 (W.D. Va. July 14, 2003) (quoting In re Office Prods. of Am., Inc., 140 B.R. 407, 410 (Bankr. W.D. Tex. 1992)). Similarly, courts have found that provisions in a lease that effectively diminish the value of the lease as an asset of a debtor's estate are "in conflict with fundamental bankruptcy policy." See, e.g., Crow Winthrop Operating Partnership v. Jamboree LLC (In re Crow Winthrop Operating Partnership), 241 F.3d 1121, 1124 (9th Cir. 2001),

34.     For instance, in Double K. Props., the landlord argued that, even though the actual assignment of the commercial lease at issue was permissible notwithstanding a provision that restricted such assignment, the lease contained a further provision that the option to extend the lease was personal to the original tenant and thus the extension option did not survive the assignment of the lease by the debtor to the assignee. Double K. Props., 2003 U.S. Dist. LEXIS 11940, at *1. The assignee argued that the landlord's refusal to accept the extension of the lease violated section 365(f)(3) of the Bankruptcy Code because it

impermissibly modified the terms of the original lease by effectively turning a potential twelve-year lease into a two-year lease. Id.

35. The Double K. Props. Court found that the lease provision on which the landlord relied impermissibly modified the lease "on account of assignment" under section 365(f)(3) by creating an "economic impediment" on the debtor's assignment of the lease. Id. at *5, *6-7. As such, the court found that "the Bankruptcy Code trump[ed] the extension restriction of the lease and that the new tenant [was] entitled to exercise the option and extend the lease." Id. at *1.

36. Likewise, in In re David Orgell, the landlord sought to enforce a clause in a commercial lease that provided for an increase in the rate of rent upon assignment under section 365 of the Bankruptcy Code. In re David Orgell, 117 B.R. at 574. The David Orgell court found that the increase in rent was an unenforceable modification of the original lease terms with respect to the assignment of the lease accomplished through the bankruptcy, but that "the lease provision [would] remain[] intact in the lease agreement, and its enforceability [would be] determined by applicable law in any *future assignment*." Id. (emphasis supplied).

37. Finally, in Crow Winthrop, the debtor assigned certain contracts to the assignee, including a settlement agreement that contained certain parking and management provisions. Crow Winthrop, 241 F.3d at 1123. Following the assignment, the landlord exercised a change of ownership provision in the lease, which effectively terminated the assignee's rights to enjoy the parking and management provisions of the agreement. Id. The Crow Winthrop court found that the change of ownership provision was not enforceable under section 365(f) against the assignee by virtue of the assignment under section 365 because it significantly reduced, if not outright eliminated, the economic benefits that existed under the pre-assignment

agreement. Id. at 1124 (finding that enforcement of the provision would prevent debtor from the full realization of the value of its assets, which would be "in conflict would fundamental bankruptcy policy.").

38.   In this case, the Landlord has asserted that by virtue of the assignment of the Lease to LDRV Holdings through the Chapter 11 Cases, an assignment under section 13.1 of the Lease took place, thereby triggering the loss of Purchase Option clause set forth in section 33.3 of the Lease. This position is untenable under section 365(f)(3) of the Bankruptcy Code.

39.   Indeed, the Landlord's argument on this score is fatally flawed in numerous respects. First, section 365(f)(3) invalidates a provision in a lease of a debtor that permits a party other than the debtor to modify a lease or any right or obligation thereunder on account of an assignment of such lease under section 365(a) of the Bankruptcy Code. See 11 U.S.C. § 365(f)(3). Notwithstanding this statutory backdrop, the Landlord argues that the loss of Purchase Option clause in section 33.3 of the Lease was triggered by virtue of the assignment of the Lease pursuant to section 13.1 in the Chapter 11 Cases. But the most glaring flaw in the Landlord's argument is that the provision it relies on to support its argument is the very provision to which section 365(f) applies. By using the Lease's anti-assignment provision to trigger the loss of the valuable Purchase Option in the Lease, the Landlord is effectuating an improper and unenforceable modification under section 365(f)(3).

40.   Second, by arguing that the Purchase Option has been stripped due to the nature of the assignment that occurred during the Chapter 11 Cases, the Landlord is depriving Debtor Lazy Days' of the full benefit of an asset of its estate. Such a result is in direct contravention of well-settled bankruptcy policy. More specifically, this result is expressly what the Double K., David Orgell and Crow Winthrop Courts sought to remediate through their

14

respective rulings. Finally, contrary to the clear state of the law on this point, the Landlord's failure to honor the Purchase Option would mean that the assigned Lease differs in form and substance from the Lease that Debtor Lazy Days' sought to assume, thereby preventing assignee LDRV Holdings from stepping into the shoes of Lazy Days' and enjoying the same benefits and burdens under the Lease.

41.     Thus, the Court should enter an order enforcing section 365(f) of the Bankruptcy Code and its application to the Lease, including the Purchase Option, in light of the assumption and assignment thereof pursuant to the Plan and the Confirmation Order. Furthermore, the Court should make clear in its ruling that, consistent with the Confirmation Order, the Prepackaged Plan, the Operative Documents, and the clear state of the law, the Landlord's attempt to strip the Lease of its Purchase Option in section 33.3 of the Lease constitutes an impermissible and unenforceable modification of the Lease under section 365(f)(3).

## CONCLUSION

42.     For the reasons stated above, the Reorganized Debtors respectfully request that the Court enter (a) an order reopening the Reorganized Debtors' Chapter 11 Cases for the limited purpose of adjudicating this Motion and obtaining related relief, and (b) an order enforcing the Confirmation Order, the Prepackaged Plan and the Bankruptcy Code by providing the Reorganized Debtors with the benefit of all applicable provisions of the Lease, including but not limited to, the Purchase Option.

## NOTICE

43.     Notice of this Motion has been provided to the Landlord (as set forth in the Operative Documents), the Office of the United States Trustee for the District of Delaware,

and all parties having requested notice pursuant to Bankruptcy Rule 2002 with respect to these Chapter 11 Cases. The Reorganized Debtors submit that no or other further notice is necessary under the circumstances.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Reorganized Debtors respectfully request that the Court enter an order: (i) substantially in the form attached hereto as <u>Exhibit F</u>, reopening the Chapter 11 Cases for the limited purpose of adjudicating this Motion and granting related relief, and (ii) substantially in the form attached hereto as <u>Exhibit G</u>, compelling the Landlord to comply with the Confirmation Order and the Prepackaged Plan.

Dated: June 7, 2011
      Wilmington, Delaware

/s/ Maris J. Finnegan

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Edmon L. Morton (Bar No. 3856)
David R. Hurst (No. 3743)
Sean T. Greecher (No. 4484)
Maris J. Finnegan (No. 5294)
1000 West Street, 17th Floor
PO Box 391
Wilmington, Delaware 19801
Telephone:   (302) 571-6600
Facsimile:   (302) 571-1253

- and -

**SHUMAKER, LOOP & KENDRICK, LLP**
C. Philip Campbell, Jr.
Theodore. C. Taub
101 East Kennedy Blvd., Suite 2800
Tampa, Florida 33602
P.O. Box 172609
Telephone:   (813) 229-7600
Facsimile:   (813) 229-1660

- and -

**SHUMAKER, LOOP & KENDRICK, LLP**
Peter E. Krebs
1000 Jackson Street
Toledo, Ohio 43604-5573
Telephone:   (419) 241-9000
Facsimile:   (419) 241-6894